(No. 35223.—

LEONARD DALKOFF *et al.*, Appellees, *vs.* THE CITY OF ROCK
ISLAND, Appellant.

*Opinion filed September 24, 1959.*

BERNARD C. GILLMAN, and DOROTHEA O'DEAN, both of
Rock Island, for appellant.

STEWART R. WINSTEIN, and HARRISON H. KAVENSKY,
both of Rock Island, for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Defendant, the city of Rock Island, here appeals from a declaratory judgment of the circuit court of Rock Island County finding the city's zoning ordinance to be unconstitional and void in its application to certain lots owned respectively by George Jannes, Adolph DeWitte, Leonard Dalkoff and their spouses, the plaintiffs. The appeal is predicated upon a proper certificate of the trial court, (Ill. Rev. Stat. 1957, chap. 110, par. 75(1),) and the record affirmatively establishes that plaintiffs had exhausted their administrative remedies before prosecuting this action. See: *Bright* v. *City of Evanston*, 10 Ill.2d 178.

Plaintiffs seek a change of zoning classification from residential to commercial, thus the basic issue presented is whether the existing residential classification bears a real and substantial relation to the public health, safety, welfare or morals, or whether, as plaintiffs claim, it is so arbitrary, unreasonable and confiscatory as to infringe upon their right to use their property as they see fit. To justify the residential classification the city asserts that plaintiffs' properties are an integral part of a "solidly" residential area, that the public welfare, from a standpoint of safety to both pedestrians and vehicles, is best served by restricting any further commercialization in the area, and that rezoning to a commercial classification will result in a substantial depreciation to nearby residence properties. While numerous zoning principles are cited to us by both parties, notably those expressed in *Kennedy* v. *City of Chicago*, 11 Ill.2d 302, *Krom* v. *City of Elmhurst*, 8 Ill.2d 104, *Mundelein Estates, Inc.* v. *Village of Mundelein*, 409 Ill. 291, and *Forbes* v. *Hubbard*, 348 Ill. 166, a determination of whether or not a particular zoning ordinance is in the interest of the public welfare must be determined upon the particular facts of the case.

Here the record establishes that the lots in question, four in number, are zoned and used for residential purposes

and that all are located on the north side of 18th Avenue, an east-west thoroughfare which bears a great volume of traffic. The Jannes property, consisting of two lots, is located on the northwest corner of the intersection of 18th Avenue and 29th Street, and has a total frontage of 87 feet on the street and a frontage of 123.5 feet on the avenue. The Jannes residence is on the corner lot and faces 29th Street. Across 29th Street, on the northeast corner of the same intersection, is the DeWitte property; it, in turn, is adjoined at the rear, or east, by the Dalkoff property, the latter being situated upon what is the northwest corner of the intersection of 18th Avenue and 29½ Street. Each property has a frontage of 123.5 feet on 18th Avenue and each has a frontage of 45 feet on 29th and 29½ streets, respectively. The DeWitte and Dalkoff residences likewise face upon the side streets.

A short block to the east of the Dalkoff property 18th Avenue intersects with 30th Street, the latter a heavily traveled north-south thoroughfare. At such intersection an outlying business district, extending in both directions and along both sides of 18th Avenue, has been in existence for approximately 30 years. As a result commercial uses and commercial zoning classifications predominate to a depth of approximately 80 feet on both sides of 18th Avenue for five blocks in either direction from the intersection. There are, however, some residences, apartments and a school building interspersed among the commercial uses, and beyond 18th Avenue, to the north and south, are substantial residential areas. Between 29th and 30th streets all property on 18th Avenue, except that of the plaintiffs, is zoned and used for commercial purposes. Thus it is that their properties are across the street from such uses as a filling station, supermarket, jewelry store, confectionary and food store. On the east, between 29½ and 30th streets, they are flanked by a root-beer stand, drug store with a doctor's office, and a filling station; to the west,

along the north side of 18th Avenue between the Jannes land and 25th Street, the lots in question are flanked by three residences, two of which are multiple family dwellings, by a school yard and school, and by a commercial area which includes a barber shop and market. Across from the latter area, on the south side of 18th Avenue, are located an ice cream stand, drug store and other businesses.

Without further detailing other commercial uses in the immediate area along 18th Avenue, it is manifest that plaintiffs' properties are not a part of a solid residential district as the city contends. They are, rather, characterized by the enveloping commercial area along both sides of 18th Avenue of which they are, geographically, a component part. (Cf. *Petropoulos* v. *City of Chicago,* 5 Ill.2d 270; *Braden* v. *Much,* 403 Ill. 507.) Zoning ordinances restricting a certain area to a residential use have been consistently found to be void where such property is so situated, with relation to a commercial zone, as to render it peculiarly unattractive and of little value for residential purposes. (*Krom* v. *City of Elmhurst,* 8 Ill.2d 104; *Tower Cabana Club* v. *City of Chicago,* 5 Ill.2d 11.) Therefore, unless compelling reasons of public welfare or safety exist, the imposition of a residential restriction on the plaintiffs' lots, while permitting a commercial classification for properties similarly situated, must be found to be discriminatory and unreasonable.

Defendant urges, however, that the present residential classification bears a direct and reasonable relationship to the public safety and welfare in that any further commercialization along this part of 18th Avenue will increase traffic hazards for both pedestrians and vehicles. While the facts of the case show that the avenue carries a great volume of traffic, they likewise show that a residential classification of plaintiffs' properties is not necessary to the end that dangerous congestion may be lessened or avoided. Heavy traffic exists not because of the commercial uses in

the area, but because of the unusual circumstance that 18th Avenue is so located as to be but one of three unobstructed east-west traffic arteries available to the 100,000 residents of the contiguous cities of Rock Island, Moline and East Moline. In a well considered written opinion the trial court commented upon the situation as follows: "All the other east-west possible routes are either devious or completely obstructed in some manner. It thus becomes necessary that 18th Avenue be a 2-way route in spite of the fact that the volume of traffic is excessive. From the nature of the situation it is apparent that this excessive traffic condition would exist even though there were no commercial enterprises in the area here involved. The existence of these commercial enterprises has undoubtedly added to the traffic difficulty, but they are not the cause of it; on the contrary, the heavy traffic is what brings forth the pressure for a commercial area, * * *."

From all the circumstances in evidence it is our opinion that the traffic conditions on the avenue afford no rational basis for discrimination against plaintiffs' properties. Indeed, as pointed out in *Tews* v. *Woolhiser,* 352 Ill. 212, congested traffic conditions scarcely constitute an argument in support of a residential classification, but rather argue the unfitness of property for such use. Added to the facts which show that the commercial enterprises do not create the excessive traffic in the area, are those which show that a commercialization of plaintiffs' lots could not and would not make an appreciable difference on the existing situation. Such being the case, a change of zoning would create such insignificant and minimal changes in traffic as to bear little relation to the public safety. (Cf. *Exchange National Bank of Chicago* v. *County of Cook,* 6 Ill.2d 419; *Petropoulos* v. *City of Chicago,* 5 Ill.2d 270.) On the other hand, if the residential classification is enforced, the damage to the plaintiffs is considerable and the effect is unreasonable and confiscatory. It is axiomatic in such cases that where the

public interest is nonexistent or insignificant and the opposing private interest will suffer great injury, the zoning measure is unreasonable and, hence, is a violation of due process and equal protection guaranties. See: McQuillin, Municipal Corporations, 3rd ed. 1950, vol. 8, sec. 25.43.

While the validity of a zoning ordinance is not made to depend upon the gain or loss of a few individuals, the effect of such an ordinance upon land values is a proper element to be considered and may be persuasive in determining its relation to the public welfare. (*Galt* v. *County of Cook*, 405 Ill. 396; *Metropolitan Life Ins. Co.* v. *City of Chicago*, 402 Ill. 581.) The profit that would accrue to individual property owners if zoning restrictions were removed must be weighed against the detriment to public welfare that would result from such action, and if the gain to the public is small when compared with the hardship imposed upon individual property owners, no valid basis for an exercise of the police power exists. (*Evanston Best & Co.* v. *Goodman*, 369 Ill. 207.) While there is opinion evidence in this case, both expert and nonexpert, that a commercial classification of plaintiffs' properties will depreciate the value of nearby residential properties, there is also proof that the same properties are already depreciated in value by the commercial uses already existing in the area and by the traffic conditions existing on 18th Avenue. Under the circumstances it is extremely doubtful that any substantial diminution in the value of nearby residences would in fact result from the presence of one or more additional commercial uses in the area. (Cf. *Krom* v. *City of Elmhurst*, 8 Ill.2d 104.) Contrariwise, the proof reflects that plaintiffs' properties, as well as other residences in the area, have a greater value if used for commercial purposes, and that the commercial uses surrounding them have detracted from their suitability and marketability for residential use. Measuring the doubtful public gain against the definite detriment and loss to the plaintiffs, it is our conclusion that

the public need or good does not justify a restriction of plaintiffs' properties to a residential classification.

The judgment of the circuit court of Rock Island County is affirmed.

*Judgment affirmed.*